UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

Nº 07-CV-2291 (JFB) (WDW)

———————————

MARTIN A. LEHMAN,

Plaintiff,

VERSUS

FOX CABLE NETWORKS INC., FOX REALITY.COM, TERMITE ART PRODUCTIONS
DOCUMENTARIES, INC., ERIK J. NELSON AND LIONS GATE ENTERTAINMENT, INC.,

Defendants.

———————————

**MEMORANDUM AND ORDER**
August 25, 2009

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Martin A. Lehman ("plaintiff" or "Lehman"), a medical doctor, brings this action in diversity against defendants Fox Cable Networks Inc., Fox Reality.com, Termite Art Productions Documentaries Inc. ("Termite"), Erik J. Nelson ("Nelson"), and Lions Gate Entertainment, Inc. ("Lions Gate") (collectively, "defendants"), asserting claims of libel per se and slander per se under New York State common law and invasion of privacy in violation of New York State Criminal Procedure Law ("C.P.L.") § 190.25(4). Specifically, plaintiff alleges that defendants telecasted two "reality" programs featuring surveillance video footage of plaintiff conducting a medical exam, footage he claims was unlawfully obtained from his grand jury proceedings in a related criminal prosecution, and then edited so as to misrepresent the quality of care he provided.

Plaintiff seeks one million dollars in compensatory damages and three million dollars in punitive damages from each named defendant. All defendants now move to dismiss plaintiff's C.P.L. § 190.25(4) cause of action for failure to state a claim and defendants Termite and Nelson move for summary judgment dismissing the defamation claims against them. For the reasons set forth below, defendants' respective motions are granted in their entirety. The case against the remaining defendants on the remaining claims will proceed under the direction of Magistrate Judge William D. Wall.

## I. BACKGROUND

For purposes of the motion to dismiss, the Court has taken the facts described below from the amended complaint ("Compl."). These facts are not findings of fact by the Court, but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party. For purposes of the motion for summary judgment, the Court has taken the facts described below from the parties' affidavits, exhibits, and defendants' Local Civil Rule 56.1 statement of facts ("Defs.' 56.1").[1] Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. New York*, 422 F.3d 47, 50 (2d Cir. 2001).

### A. Facts

Plaintiff is an orthopedic surgeon and resident of the State of New York. (Compl. ¶¶ 9, 15.) Defendants Fox Cable Networks, Inc., Fox Reality.com, Termite Art Productions Documentaries, Inc., and Lions Gate Entertainment Inc. are corporations and residents of the State of California. (Compl. ¶¶ 10-12, 14.) Defendant Nelson is the president of Termite. (Compl. ¶ 13.) On May 21, 1997, plaintiff was arrested and charged with insurance fraud. (Compl. ¶ 15.) After a criminal trial, a jury acquitted him. (Compl. ¶¶ 16-17.) In 1998, prior to plaintiff's acquittal, Termite produced a television program entitled "Busted on the Job 2" that incorporated a brief video clip of a doctor examining a patient. (Defs.' 56.1 ¶ 3.) The clip was part of a surveillance tape provided to Termite by the Nassau County District Attorney's Office. (Defs.' 56.1 ¶ 4.) Termite licensed "Busted on the Job 2" to Fox Broadcasting Network, Inc. in 1998 for a four-year term and the show initially aired in 1998. (Defs.' 56.1 ¶ 6.) On August 28, 1998, Lions Gate acquired all assets and liabilities of Termite, at which time Termite ceased to exist as a separate corporate entity. (Defs.' 56.1 ¶ 7.) The former Termite employees then became employees of Lions Gate and functioned as an in-house production division of Lions Gate. (Defs.' 56.1 ¶ 8.) As part of its acquisition of Termite, Lions Gate

---

[1] The Court notes that plaintiff has failed to file and serve a response to defendants' Local Civil Rule 56.1 statement of facts, in violation of Local Civil Rule 56.1. Generally, a "plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 139 (S.D.N.Y. 2003)). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Gilani v. GNOC Corp.*, No. 04 Civ. 2935 (ILG), 2006 U.S. Dist. LEXIS 23397, at *4-5 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Accordingly, in the exercise of its broad discretion and given plaintiff's *pro se* status, the Court will overlook this defect and will deem admitted only those facts in defendants' Local Civil Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Jessamy*, 292 F. Supp. 2d at 504. Thus, in the instant case, although plaintiff only submitted a four-page memorandum of law with attached exhibits in opposition to defendants' motion, the Court has carefully reviewed all of the submissions to determine if plaintiff has any evidence to support his claims.

obtained ownership of all existing Termite programs, including ownership of all right, title, and interest in "Busted on the Job 2." (Defs.' 56.1 ¶ 9.) In July 2000, while operating as an in-house production arm at Lions Gate, Termite included the aforementioned clip of the doctor in the television program "Totally Embarrassed." (Defs.' 56.1 ¶ 10.)

In or around March 2004, Nelson formed a new company that shared no common ownership with Lions Gate. (Defs.' 56.1 ¶ 11.) At this time, the Termite production arm within Lions Gate ceased operations and Lions Gate ceased to produce programming under the Termite name. (Defs.' 56.1 ¶ 12.) In or around September 2005, Lions Gate licensed "Busted on the Job 2" and "Totally Embarrassed" to defendant Fox Reality Channel (which is referred to as "Fox Reality.com" in the complaint). (Defs.' 56.1 ¶ 13.) Neither Nelson nor Termite possessed any ownership interest in these two television programs at the time that they were licensed to Fox Reality Channel, nor did they participate in Lions Gate's decision to license them. (Defs.' 56.1 ¶¶ 14-15.) On May 20, 2007, pursuant to its license, Fox Reality Channel telecasted "Busted on the Job 2." (Defs.' 56.1 ¶ 16.) On April 22, 2008, also pursuant to that same license, Fox Reality Channel telecasted "Totally Embarrassed." (Defs.' 56.1 ¶ 17.)

Plaintiff alleges that the video clip in question featured him, dubbed him a "bogus doctor," and grouped him with video clips featuring known individuals convicted of criminal acts. (Compl. ¶ 18.) Plaintiff further alleges that the narrator of the clip stated, "Don't worry, this rehearsal cost him his practice," when, in reality, the examination was not a rehearsal and there were no restrictions on plaintiff's medical license. (Compl. ¶¶ 22-23.) Plaintiff alleges that defendants invaded his privacy by obtaining and showing the tape, which was sealed in 1998 by New York law as evidence in a grand jury proceeding. (Compl. ¶ 24.)

B. Procedural History

On June 7, 2007, plaintiff filed the instant action against defendants. On July 19, 2007, defendants filed their answer. On May 13, 2008, plaintiff filed an amended complaint. On June 13, 2008, defendants filed their answer. On September 30, 2008, all defendants moved to dismiss plaintiff's C.P.L. § 190.25(4) claim and defendants Nelson and Termite moved for summary judgment dismissing plaintiff's defamation claim. Plaintiff filed his opposition on October 10, 2008. Defendants submitted their reply on November 9, 2008. This matter is fully submitted.

II. STANDARD OF REVIEW

A. Motion to Dismiss

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 563 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. *See* 129 S. Ct. at 1937. The Court instructed district courts to first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations[,] a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57).

B. Summary Judgment

The standards for summary judgment are well-settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed.

4

*R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted); *Tufariello v. Long Island R.R.*, 364 F. Supp. 2d 252, 256 (E.D.N.Y. 2005). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomm., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

III. DISCUSSION

A. Motion to Dismiss Plaintiff's Cause of Action Under C.P.L. § 190.25(4)

Defendants argue that plaintiff's claim brought pursuant to C.P.L. § 190.25(4) must fail because the plain language of that statute is inapplicable to the defendants in this action. As set forth below, the Court agrees.

C.P.L. § 190.25(4) states, in relevant part, that:

> Grand jury proceedings are secret, and no grand juror, or other person specified in subdivision three of this section or section 215.70 of the penal law, may, except in the lawful discharge of his duties or upon written order of the court, disclose the nature or substance of any grand jury testimony, evidence, or any decision, result or other matter attending a grand jury proceeding.

*Id*. Subdivision 3 of the section lists the following individuals:

> (a) The district attorney; (b) A clerk or other public servant authorized to assist the grand jury in the administrative conduct of its proceedings; (c) A stenographer authorized to record the proceedings of the grand jury; (d) An interpreter . . . ; (e) A public servant holding a witness in custody . . . ; (f) An attorney representing a witness . . . ; (g) An operator . . . while the videotaped examination of either a special witness or a child witness is being played; (h) A social worker, rape crisis counselor, psychologist or other professional providing emotional support to a child witness twelve years old or younger who is called to give evidence in a grand jury proceeding . . . .

C.P.L. § 190.25(3). Section 215.70 supplements the list of individuals who may not disclose the substance of a grand jury proceeding to include the following: "a clerk, attendant, warden or other public servant having official duties in or about a grand jury room or proceeding, or a public officer or public employee." C.P.L. § 215.70.

In the instant case, even though plaintiff has alleged that defendants obtained evidence from his grand jury proceedings, he has not alleged that any of the defendants fall into the above-referenced categories of individuals upon whom the statute imposes the duty of confidentiality related to that evidence. Accordingly, even accepting all facts plead in plaintiff's complaint as true and construing them in the light most favorable to him, his

5

C.P.L. § 190.25(4) claim against all defendants arising from the telecast of the grand jury surveillance footage must fail, as a matter of law. *See, e.g., Hays v. Marano*, 114 A.D.2d 387, 389 (N.Y. App. Div. 1985) ("We note that C.P.L. 190.25(4) and its companion statute Penal Law § 215.70 contain an inclusive list of parties to the Grand Jury process who may be prosecuted for disclosure of the nature and substance of Grand Jury material without court approval. Members of the media are not included among those persons.").[2]

### B. Motion for Summary Judgment Dismissing All Claims Against Nelson and Termite

Defendants Nelson and Termite argue that, even if the telecasts in question were defamatory, the undisputed facts demonstrate that any claims arising from those telecasts are not timely as asserted against them. For the reasons stated *infra*, the Court agrees.

In New York State, an action to recover damages for libel or slander must be asserted within one year of the publication of the allegedly defamatory statement. N.Y. C.P.L.R. § 215(3). Generally, such an action accrues on the date of the first publication. *See Gelbard v Bodary*, 270 A.D.2d 866, 866 (N.Y. App. Div. 2000). Under the "single publication rule," followed in New York State, the publication of a defamatory statement in a single issue of a newspaper or magazine, though widely distributed, constitutes only one publication of the statement and triggers the statute of limitations. *See Firth v State of N.Y.*, 98 N.Y.2d 365, 369 (N.Y. 2002); *Gregoire v G.P. Putnam's Sons*, 298 N.Y. 119, 123 (N.Y. 1948). Such a rule prevents the "endless retriggering of the statute of limitations, multiplicity of suits and harassment of defendants." *Firth*, 98 N.Y.2d at 370. However, there is a "republication" exception to this rule, wherein a new cause of action accrues upon a "separate aggregate publication from the original, on a different occasion, which is not merely 'a delayed circulation of the original edition.'" *Id.* at 371 (quoting *Rinaldi v. Viking Penguin, Inc.*, 52 N.Y.2d 422, 435 (N.Y. 1981)). This exception is applicable in certain situations, with courts considering the following circumstances in making such a determination: whether the new publication targets and actually reaches a new audience, *see Firth*, 98 N.Y.2d at 371; whether the new publication is made on an occasion separate from the original one, *see Lehman v. Discovery Comm'cns, Inc.*, 332 F. Supp. 2d 534, 539 (E.D.N.Y. 2004); whether the new publication is modified, *see Zoll v Jordache Enters., Inc.*, No. 01 Civ. 1339 (CSH), 2002

---

[2] Plaintiff argues that the *Hays* decision requires media members to obtain grand jury materials "lawfully" before publication, which did not occur in the instant case, thereby rendering defendants liable under C.P.L. § 190.25(4). The Court rejects this argument, noting that, first and foremost, the plain language of the statute controls and, as set forth *supra*, its inclusive list of persons owing a duty of confidentially does not include any of the defendants in the instant matter. Furthermore, though the *Hays* court did note that the defendants in that matter had obtained the grand jury materials lawfully, it did not state that this fact controlled the outcome, as the statute in question did not cover the individuals in question, regardless of how they obtained the published material. Therefore, it is irrelevant to the case at bar how the defendants obtained the alleged grand jury materials, as the statute imposes no duty of confidentiality upon them with regards to publication of those materials.

WL 31873461, at *11 (S.D.N.Y. Dec. 24, 2002); and, as is applicable to the case at bar, whether the defendant has *control* over the decision to republish. *See Lehman v. Kornblau*, 12 Misc. 3d 1, 3-4 (N.Y. Sup. Ct. 2006) (emphasis added).

In the instant matter, plaintiff's claims arising from Fox Reality Channel's 2007 and 2008 telecasts of "Busted on the Job 2" and "Totally Embarrassed" are timely. However, it is undisputed that neither Nelson nor Termite had any ownership rights over those programs at the time that Lions Gate licensed them to Fox Reality Channel for telecast, nor did they exercise any control over Lions Gate's decision to do so. Specifically, though Nelson and Termite were involved with the production and telecast of "Busted on the Job 2" in 1998 and "Totally Embarrassed" in 2000, both defendants surrendered any ownership rights in either program in 2004, when Nelson formed an independent company and Termite ceased operations. At that time, Lions Gate possessed ownership rights of the programs, having purchased all assets and liabilities of Termite in August 1998. Therefore, any defamation claims against Nelson and Termite arising from these two programs would necessarily had to have been commenced within one year of the 1998 and 2000 telecasts, respectively, because those were the only telecasts for which either defendant could have borne any responsibility. *See Rinaldi*, 52 N.Y.2d at 435 (defamation claims brought pursuant to "republication" exception dropped on statute of limitations grounds against authors who "had no knowledge of and played no role in either the decision to issue a paperback edition or in its implementation"); *Lehman*, 12 Misc. 3d at 4 (defamation republication claim dismissed against defendants "since they were not part of the decision-making process to rebroadcast the program"). Here, plaintiff filed suit against all defendants in June 2007, long after the statute of limitations against Nelson and Termite had run. His claims against Nelson and Termite are thus barred by C.P.L.R. § 215(3) and must be dismissed.

IV. CONCLUSION

For the reasons set forth above, defendants' motion to dismiss plaintiff's cause of action under C.P.L. § 190.25(4) is GRANTED. Defendants Nelson and Termite's motion for summary judgment seeking dismissal of all claims against them is also GRANTED. The case against the remaining defendants on the remaining claims will proceed under the direction of Magistrate Judge William D. Wall.


SO ORDERED.


_____
JOSEPH F. BIANCO
United States District Judge

Dated:   August 25, 2009
         Central Islip, New York


\* \* \*

Plaintiff represents himself *pro se*: Martin A. Lehman, 308 Elm Street, West Hempstead, New York 11552. The attorney for defendants is John J. Lynch, Esq., Pryor Cashman LLP, 7 Times Square, New York, New York 10036-6569.

7